SIDNEY F. TYLER, WILLIAM M. ELKINS, GEORGE D. WIDENER AND THE REAL ESTATE-LAND TITLE AND TRUST COMPANY, SURVIVING AND SUCCEEDING TRUSTEES UNDER THE LAST WILL AND TESTAMENT OF WILLIAM L. ELKINS, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 56449. Promulgated June 13, 1933.

*William R. Spofford, Esq.*, for the petitioners.
*Paul E. Waring, Esq.*, for the respondent.

TRAMMELL: The respondent determined the deficiency in controversy by including in the gross income of the petitioners for the taxable year 1927 a profit of $59,400 derived from the sale of 66 shares of stock of the Delaware Co., and a profit of $500 realized on the retirement of bonds of the Westmoreland Water Co. The petitioners make no objections to the amount of the profit computed by the respondent in either instance, but contend that both items were received by them in 1928, and that hence neither is taxable as a part of the gross income for 1927.

In his brief the respondent concedes that the profit resulting from the retirement of the water company bonds " represented taxable income to the petitioners in 1928 and *not* in 1927." The issue remaining for consideration, therefore, is whether or not the petitioners received the profit from the sale of the stock of the Delaware Co. in 1927. This is purely an issue of law, all material facts having been stipulated by the parties.

On or before November 25, 1927, the petitioners transmitted their 66 shares of the Delaware Co.'s stock to the Safe Deposit & Trust Co., the depositary, with the printed assignment executed in blank. On or before December 1, 1927, more than 80 percent of the stock of the Delaware Co. had been so deposited and on or before December 17, 1927, the purchaser turned over the purchase price thereof to the depositary. The depositary mailed its check to the petitioners for their stock on January 5, 1928, which check was received by the petitioners on the following day.

The respondent argues that the depositary was the agent of the petitioners, and that receipt of the proceeds of sale by their agent on December 17, 1927, constituted constructive receipt by them. In support of his contention the respondent cites our decisions in *Julia A. Strauss*, 2 B.T.A. 598; *L. & M. Holding Co.*, 3 B.T.A. 601; *Estate of C. W. Crews*, 8 B.T.A. 301; *F. H. Wilson*, 12 B.T.A. 403, and others, in which we held that receipt by an agent was receipt by the principal; but in all of the cases cited the agent was acting in such capacity exclusively for the taxpayer, and immediately upon receipt by the agent the fund was subject to the unqualified demand of the taxpayer.

In the instant case a wholly different situation is presented. The depositary was not the exclusive agent of the petitioners, and upon receipt of the proceeds of sale by the depositary the amount due petitioners was not immediately available to them. The depositary acted for the petitioners and the other stockholders only incidentally. It was bound under the agreement to hold the stock certificates until 80 percent or more of the stock was received by it for transfer to

the purchaser, and in the event the required percentage of stock was not obtained, to return the initial payment to the purchaser and the certificates to the respective owners. The depositary also had the duty of disbursing the amount of $32 per share for expenses and as compensation to the officers of the Delaware Co. for services rendered in negotiating the deal.

Furthermore, the depositary agreed to represent these petitioners and the other minority stockholders in the transaction upon certain specifically stated conditions, namely, (1) that it would promptly send its receipt for all stock certificates received; (2) that in the event the sale was consummated, it would remit the net proceeds of sale by cashier's check *shortly after January 1, 1928;* and (3) that in the event the sale was not consummated, the certificates would be returned.

The foregoing facts, in our opinion, indicate that the depositary was acting in a fiduciary capacity under the terms of the contract, with the duty, which it voluntarily assumed, of safeguarding the interests of all parties concerned, rather than acting as an agent of any of them. However, we think it is not material to determine the precise relationship of the depositary to these petitioners, for the reason that it clearly appears that the petitioners had no right to demand proceeds of the sale of their stock prior to January 1, 1928. By sending in their stock certificates, with the printed assignment thereon executed in blank pursuant to the letter from the depositary dated November 14, 1927, they evidenced their acceptance of the conditions recited therein in accordance with the express provisions of that letter, one of which was that remittance of proceeds of sale would not be made until subsequent to January 1, 1928.

In *John A. Brander*, 3 B.T.A. 231, 235, we said:

This doctrine (of constructive receipt), as we have made clear in several appeals, is not to be applied lightly, but only in situations where it is clearly justifiable. When taxable income is consistently computed by a citizen on the basis of actual receipts, a method which the law expressly gives him the right to use, he is not to be defeated in his *bona fide* selection of this method by "construing" that to be received of which in truth he has not had the use and enjoyment. Constructive receipt is an artificial concept which must be sparingly applied, lest it become a means for taxing something other than income and thus violate the Constitution itself.

To the same effect see *Hal E. Roach*, 20 B.T.A. 919, 924.

The present case, in our opinion, does not justify invoking the doctrine of constructive receipt, and respondent's action is reversed. Since the deficiency results solely from the inclusion in gross income of the two items hereinabove mentioned, neither of which was received during the taxable year,

*Judgment will be entered for the petitioners.*